IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

Verlene Turner,                           )
                                          )        Civil Action No. 6:05-1397-GRA-WMC
                    Plaintiff,            )
                                          )        **REPORT OF MAGISTRATE JUDGE**
        vs.                               )
                                          )
Jo Anne B. Barnhart,                      )
Commissioner of Social Security,          )
                                          )
                    Defendant.            )
_____ )

        This case is before the court for a report and recommendation pursuant to

Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this

District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

        The plaintiff brought this action pursuant to Section 205(g) of the Social

Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a final

decision of the Commissioner of Social Security Administration that the plaintiff was not

entitled to disability insurance benefits ("DIB").

**ADMINISTRATIVE PROCEEDINGS**

        On July 30, 2003, the plaintiff filed an application for DIB alleging disability

beginning April 1, 2003, due to asthma, lower back pain and high blood pressure.  The

application was denied initially and on reconsideration.  On May 10, 2004, the plaintiff

requested a hearing, which was held on July 28, 2004.  Following the hearing, at which the

plaintiff and her attorney appeared, the administrative law judge considered the case *de*

---

[1]A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

*novo*, and on November 18, 2004, determined that the plaintiff was not entitled to benefits. This determination became the final decision of the Commissioner when it was adopted by the Appeals Council on April 15, 2005.

In making the determination that the plaintiff was not entitled to benefits, the ALJ made the following findings:

(1)    The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.

(2)    The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

(3)    The claimant's asthma and back pain are considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(c).

(4)    These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

(5)    The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

(6)    The claimant has the following residual functional capacity: to: sit, stand and walk each for 6 hours of an 8 hour day; frequently lift/carry 10 pounds; occasionally lift 20 pounds; and occasionally stoop, bend and twist.

(7)    The claimant's past relevant work as sewing machine operator did not require the performance of work-related activities precluded by her residual functional capacity (20 CFR § 404.1565).

(8)    The claimant's medically determinable asthma and back pain do not prevent the claimant from performing her past relevant work.

(9)    The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR § 404.1520(f)).

The only issues before the court are whether the findings of fact are supported by substantial evidence and whether proper legal standards were applied.

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. §423(a).  "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions.  An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. 20 C.F.R. §404.1520.  If an individual is found not disabled at any step, further inquiry is unnecessary.  20 C.F.R. §404.1503(a).  *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work.  SSR 82–62.  The plaintiff bears the burden of establishing his inability to work within the meaning of the Act.  42 U.S.C. §423(d)(5).  He must make a prima facie

3

showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **EVIDENCE PRESENTED**

The plaintiff was born on July 11, 1942.  She was 60 years old on April 1, 2003, her alleged disability onset date, and 62 years old on November 18, 2004, the date of the ALJ's decision (Tr. 14, 43).  She graduated from high school, completed two years of college, and had past relevant work experience as a sewing machine operator, home health aide, and certified nurses' assistant (Tr. 89, 208-209).

On April 3, 2003, the plaintiff presented to the emergency room with a moderately severe asthma attack.  Her lungs had coarse breath sounds bilaterally with expiratory wheeze, but there were no retractions and no respiratory distress.  A chest x-ray revealed no acute infiltrate and no acute disease.  The plaintiff was given three different albuterol treatments.  She was reexamined, and, at that point, her lungs were clear to auscultation bilaterally with only very scant wheeze and no respiratory distress.  The plaintiff was diagnosed with reactive airway disease exacerbation and bronchitis (Tr. 116).

On April 9, 2003, the plaintiff followed up with Dr. D.J. Molter.  She had continued shortness of breath and wheezing.  The plaintiff stated that her lower back pain had improved since her prior examination.  On examination, the plaintiff had scattered wheezing and rhonchi.  Dr. Molter assessed the plaintiff with asthma exacerbation and bronchitis and prescribed nebulizer treatment (Tr. 145).

By April 14, 2003, the plaintiff reported to Dr. Molter that her asthma had improved after using the prescribed treatments, but she complained of fatigue and difficulty sleeping.  Dr. Molter found the plaintiff was breathing better, and he prescribed sleeping medication (Tr. 144).

On April 17, 2003, the plaintiff returned to Dr. Molter with complaints of a sore throat and earache.  She said the sleeping pills helped her sleep.  The plaintiff was diagnosed with pharyngitis and an ear infection and given antibiotic samples (Tr. 144).

On April 25, 2003, the plaintiff complained of tightness, wheezing, and some chest discomfort.  Dr. Molter found her lungs showed anterior and posterior wheezing without rhonchi or dullness.  He assessed her with asthma exacerbation and elevated blood pressure, and he adjusted her asthma medication (Tr. 144).

On May 9, 2003, the plaintiff returned to Dr. Molter for a follow-up examination.  She reported that she felt a lot better and that her wheezing had improved.  However, she reported that her energy level was low, she had difficulty sleeping, and she was experiencing some lower back pain.  She also complained of some swelling during the day.  On examination, her blood pressure was slightly elevated, lungs were clear to percussion and auscultation, and she had trace edema to +1 on her ankles.  Dr. Molter assessed her with hypertension, asthma, and edema, and prescribed a diuretic (Tr. 143).

On May 28, 2003, the plaintiff was examined by Dr. Richard W. Young for a follow-up of microscopic hematuria.  A urinalysis revealed some microscopic hematuria with a trace of blood.  Dr. Young diagnosed her with benign microhematuria and possible recurrent urinary tract infections (Tr. 112).

On May 30, 2003, the plaintiff underwent a bone density scan which revealed overall bone density was within normal limits, but in the lumbar region bone density bordered the osteopenic range (Tr. 109).

On May 30, 2003, the plaintiff also returned to Dr. Molter.  She reported that she had not been taking her diuretic medication as prescribed.  On examination, her lungs were clear to percussion and auscultation with no wheezing.  Dr. Molter found the plaintiff had "trace to no ankle edema" (Tr. 143).

On June 20, 2003, the plaintiff told Dr. Molter that her lower back pain limited her from returning to work.  Dr. Molter noted that she had not indicated this in the past, which he found unfortunate, because he stated he would have arranged physical therapy previously.  The plaintiff reported that her asthma symptoms had improved.  Dr. Molter

6

found the plaintiff's gait was normal, she could flex at the hip to 85 degrees and extend to 20 to 30 degrees, which he found was "good." Lateral movement was normal, and the plaintiff had negative straight leg raising tests (Tr. 142-43).

In June 2003, the plaintiff was evaluated for physical therapy for her lower back pain on a referral from Dr. Molter. However, she did not attend therapy after the initial evaluation due to financial difficulties (Tr. 120-24).

On July 7, 2003, the plaintiff reported that her back symptoms had improved slightly, but she was in moderate discomfort. She said that her asthma symptoms had improved but also said she still had occasional flare-ups. Dr. Molter found the plaintiff had a predominant large lordotic curve on her low back area and moderate tenderness over the L5-S1 area with muscle spasm in the paraspinous muscle. The plaintiff's gait was slow, due to back pain. Her lungs were clear to percussion and auscultation without wheezing. The plaintiff's medications were continued, and Dr. Molter advised her to remain out of work for four weeks (Tr. 142).

On July 28, 2003, the plaintiff reported to Dr. Molter that her back pain was somewhat improved but continued to give her problems. She said that she could not afford to go to physical therapy, but she was given instructions to exercise at home which seemed to be helping. On examination, the plaintiff's breathing was stable, and her lungs were clear to percussion and auscultation. She had minimal edema in her extremities and slightly elevated blood pressure. Her low back was tender, and she had decreased range of motion on flexion and extension. Dr. Molter diagnosed the plaintiff with sciatica, hypertension, and asthma (Tr. 142).

On September 22, 2003, Dr. Jeffrey C. Wilkins, an orthopedic specialist, performed a consultative examination of the plaintiff. On examination, the plaintiff had full range of motion and no tenderness in the shoulders, cervical spine, extremities, hips and knees. She had full strength in her upper and lower extremities. Her lumbar spine was

7

restricted to 15 degrees on extension (25 degrees is normal), 85 degrees on flexion (90 degrees is normal), and 20 degrees on lateral flexion (25 degrees is normal). The plaintiff had negative straight leg raising tests in both the sitting and supine positions. Her gait was without antalgia. An x-ray revealed mild disc space narrowing at L5-S1 and L4-5 and spondylosis of the facet at L5-S1. Dr. Wilkins recommended no lifting greater than 25 to 30 pounds with occasional bending and twisting. He opined that the plaintiff would no longer be able to perform her job as a nurse's assistant but could likely work at a less physical capacity (Tr. 125-28).

On December 1, 2003, the plaintiff returned to Dr. Molter. She stated that her asthma was acting up, "but not severe," but her back pain was still bad. Dr. Molter found the plaintiff had muscle spasms in the lumbar spine, going down to her gluteus and sciatic notch. Her lungs were clear to percussion and auscultation without wheezing (Tr. 141).

On January 20, 2004, a State agency physician assessed the plaintiff's physical residual functional capacity (RFC), based on a review of her medical records. The State agency physician found the plaintiff maintained the ability to perform light work with some postural limitations and avoidance of concentrated exposure to fumes, odors, dust, gasses, and poor ventilation (Tr. 150-57).

On March 18, 2004, Dr. Molter completed an Attending Physician Statement form in support of the plaintiff's claim for long-term disability. On this form, Dr. Molter noted that he had advised the plaintiff to cease her employment at Covenant Towers in April 2003, due to low back pain and asthma with acute exacerbation. He stated that the plaintiff's low back pain was made worse with housework and movements, and that she had had several episodes of shortness of breath and wheezing. Dr. Molter noted the plaintiff had decreased range of motion in her lumbar spine and negative straight leg raising tests. He recommended she avoid movements that were painful and continue taking anti-inflammatory and asthma medications (Tr. 158).

8

Dr. Molter found the plaintiff was able to function in most stress situations and some interpersonal relations, with only slight limitations in her psychological functioning. He stated she could sit intermittently for three hours, and stand and walk intermittently for one hour each. He stated the plaintiff could not climb or twist, bend or stoop, but could reach above the shoulder level and operate a motor vehicle. Dr. Molter found the plaintiff could lift 10 pounds occasionally and could not perform repetitive pushing and pulling. He stated she was unable to work and that he did not expect any improvements in her condition. Dr. Molter advised that the plaintiff not return to work, because working seemed to make her symptoms worse, and that she was able to bend, lift, stand and carry no more than one hour at a time. Dr. Molter suggested the plaintiff become involved in physical therapy, occupational therapy, a pain management program, a work hardening program, and vocational rehabilitation (Tr. 158-59).

On April 22, 2004, Dr. M. Alexander Staton, a psychiatrist, performed a psychological consultative examination of the plaintiff. The plaintiff reported that she became depressed due to chronic pain. She stated she was capable of doing housework, running errands, cooking, driving, and shopping alone. She said she was able to do housework for 30 minutes at a time. The plaintiff reported that she had several hobbies, including sewing, crocheting, reading, gardening, and participating as a Scout leader. She said that she visited and went out to eat with friends, and she attended church every week. On mental status examination, Dr. Staton found the plaintiff had normal flow of mental activity, intact associations, and fair insight. She demonstrated adequate judgment and proverb interpretation. She recalled three of three objects after five minutes, and recalled a five-letter word in forward and reverse sequence. Dr. Staton estimated that the plaintiff's intelligence was in the average range. He noted she had a depressed affect. Dr. Staton assessed the plaintiff with depressive disorder, not otherwise specified, and pain disorder associated with both psychological factors and a general medical condition. He found her

9

prognosis for her psychiatric condition was guarded. Dr. Staton summarized that the plaintiff had the psychiatric limitations of low energy and chronic pain and noted that she "fe[lt] she was unable to work due to pain and asthma" (Tr. 161-63).

On April 29, 2004, Dr. Herbert Gorod, a State agency psychiatrist, completed a Psychiatric Review Technique form based on a review of the plaintiff's medical records. Dr. Gorod found the plaintiff had an affective disorder (mild depression) that was "not severe." Dr. Gorod found the plaintiff experienced "mild" limitations in her activities of daily living, maintaining social functioning, and maintaining concentration, persistence or pace, and that she had never experienced an episode of decompensation (Tr. 168-81).

### ANALYSIS

As noted above, the plaintiff alleges disability commencing April 1, 2003, due to asthma, lower back pain and high blood pressure. The ALJ found that the plaintiff could perform her past work as a sewing machine operator. The plaintiff argues that the ALJ erred by (1) failing to properly evaluate the opinion of her treating physician; (2) finding that she could return to her past relevant work; (3) failing to find any asthma limitations in his residual functional capacity finding; and 4) finding that her depression was not a severe impairment.

The plaintiff first argues that the ALJ failed to properly evaluate the opinion of her treating physician. Dr. Molter completed an Attending Physician Statement form in support of the plaintiff's claim for long-term disability. He noted that the plaintiff had been diagnosed with low back pain and asthma with acute exacerbation. Her medications included Bextra, Advair, Singulair, and Albuterol. He stated she could sit intermittently for three hours, and stand and walk intermittently for one hour each. He stated the plaintiff could not climb or twist, bend or stoop, but could reach above shoulder level and operate a motor vehicle. Dr. Molter found the plaintiff could lift 10 pounds occasionally, could not

10

perform repetitive pushing and pulling, and  was able to bend, lift, stand and carry no more than one hour at a time.  He stated she was unable to work and that he did not expect any improvements in her condition.  Dr. Molter advised that the plaintiff not return to work, because working seemed to make her symptoms worse (Tr. 158-59).

The opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case.  *See* 20 C.F.R. §416.927(d)(2) (2004); *Mastro v. Apfel*, 370 F.3d 171 (4th Cir. 2001).  However, statements that a patient is "disabled" or "unable to work" or meets the Listing requirements or similar statements are not medical opinions.  These are administrative findings reserved for the Commissioner's determination.  SSR 96-2p.  Furthermore, even if the plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

The ALJ stated as follows in his decision:

The undersigned rejects Dr. Molter's opinion that the claimant is not capable of performing any work.  The possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another.  Another reality, which should be mentioned, is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patient's requests and avoid unnecessary doctor/patient tension.  While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case.

The doctor apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported.  Yet, as explained elsewhere in this

11

decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints.

Additionally, the undersigned notes that the determination of whether an individual is disabled is clearly reserved to the Commissioner . . . .

More importantly, Dr. Molter's opinion is without substantial support form the other evidence of record, which obviously renders it less persuasive. While his treatment notes indicate that he restricted the claimant from returning to work for a specified period as late as June, 2003, there are no records in evidence which document Dr. Molter's restrictions on the claimant's work activity from July, 2003 through April, 2004. Furthermore, in spite of his recommendation that the claimant is incapable of working, Dr. Molter noted in June 20, 2003 that "[i]t is interesting to note that she was scheduled to return to work on the 23rd. Although she has complained of some pain she has not said that this limited her going back to work until today which I find unfortunate because I could have sent her to phys[ical] therapy or something to get her towards that goal." . . . This statement seems inconsistent with Dr. Molter's apparent belief that the claimant's back pain was as severe as the claimant alleged and that the claimant is incapable fo engaging in substantial gainful activity.

(Tr. 19-20).

The plaintiff notes that the ALJ failed to mention that Dr. Molter continued the plaintiff out of work for another two weeks during the June 20, 2003, office visit. When she returned on July 7, 2003, after going to physical therapy, he extended her out of work for another four weeks (Tr. 142-43). On July 28, 2003, Dr. Molter stated that the plaintiff could no longer afford to go to physical therapy because of the high deductible (Tr. 142).

The plaintiff argues that the ALJ violated the treating physician rule by relying on innuendo rather than the evidence. In support of her argument, the plaintiff set out the following objective findings that support Dr. Molter's opinion and that were not considered by the ALJ: two admissions to the hospital in April 2003 for exacerbation of asthma (Tr. 114-15, 160); positive straight leg raising test and paraspinous muscle tenderness in March 2003 (Tr. 145); wheezing and shortness of breath in April 2003 (Tr. 145); wheezing, trouble

12

breathing, coughing up mucous, and mild respiratory distress in April 2003 (Tr. 144); some wheezing and edema in the ankles in May 2003 (Tr. 143); swelling in May 2003 (Tr. 143); muscle spasm in the paraspinous muscles and a predominate large lordotic curve in her low back, along with a slow gait in July 2003 (Tr. 142); decreased range of motion in July 2003 (Tr. 142); muscle spasms in the lumbar spine with radiculopathy in December 2003 (Tr. 141); muscle spasm in the lumbosacral area and flexion at the hip with pain in July 2004 (Tr. 203); swelling in July 2004 (Tr. 203); and leg swelling in October 2004 (Tr. 204).

As noted by the plaintiff, while the ALJ emphasized that straight leg raising was negative (Tr. 19), there were other occasions where it was positive (Tr. 145). This is consistent with the finding of Dr. Molter that the plaintiff had good days and bad days (Tr. 142, 203).

The regulations provide that even if an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he still must consider the weight given to the physician's opinion by applying five factors: (1) the length of the treatment relationship and the frequency of the examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. §404.1527(d)(2)-(5). Social Security Ruling 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p, 1996 WL 374188, *5. As stated in Social Security Ruling 96-2p:

> A finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many

13

> cases, a treating source's opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p, 1996 WL 374188, *4.

There does not appear to be any basis for the ALJ's speculation as to the treating physician's motives for providing his opinion on the plaintiff's physical limitations. As argued by the plaintiff, even if the ALJ elected not to afford Dr. Molter's opinion controlling weight, he was obligated to still weigh the value of the opinion in view of the factors cited above, which he did not do. *See* 20 C.F.R. §404.1527(d)(2)-(5).

Despite the ALJ's statement to the contrary, it does not appear to this court that Dr. Molter's opinion was one reserved for the Secretary (Tr. 19). Dr. Molter found the plaintiff had specific functional limitations, which are well-supported by medically acceptable clinical and laboratory diagnostic techniques (Tr. 158-59).

Based upon the foregoing, a remand is necessary for a proper evaluation of the treating physician's opinion.

The plaintiff next argues that the ALJ erred by finding that she could return to her past relevant work. "[U]nder the fourth step of the disability inquiry, a claimant will be found 'not disabled' if he is capable of performing his past relevant work either as he performed it in the past or as it is generally required by employers in the national economy." *Pass v. Chater*, 65 F.3d 1200, 1207 (4th Cir. 1995) (citing SSR 82-61 and *Martin v. Sullivan*, 901 F.2d 650, 653 (8th Cir.1990) ("The two tests [in SSR 82-61] are clearly meant to be disjunctive. If the claimant is found to satisfy either test, then a finding of not disabled is appropriate.")). As the ALJ noted, the plaintiff described her past relevant work as a sewing machine operator as requiring her to lift 25 pounds frequently and up to 50 pounds (Tr. 21, 59). The ALJ apparently accepted this testimony and, therefore, the plaintiff clearly could not perform her past relevant work *as she performed it in the past*. However, the ALJ cited DOT Code 787.682-046, Sewing Machine Operator (any industry), a job classified as light

14

work, as describing the job as *generally performed in the national economy*, and therefore found that the plaintiff could perform her past relevant work.  However, the plaintiff argues that the ALJ cited the wrong code.  The introductory title to Section 787 states that the title includes sewing machine operators in non-garment industries (pl. reply 7), while the plaintiff was a sewing machine operator in the garment industry (Tr. 59).  Upon remand, the ALJ should be instructed to revisit the issue of whether the plaintiff can perform her past relevant work under either test.  The plaintiff's arguments that the ALJ was required to obtain vocational expert testimony on this issue and provide a function-by-function assessment comparison with the functional demands of the plaintiff's past relevant work are without merit.

The plaintiff next argues that the ALJ erred in failing to find any asthma limitations in his residual functional capacity ("RFC") finding.  This court agrees.  Although he found the plaintiff's asthma was a severe impairment, the ALJ did not include environmental limitations in his assessment of the plaintiff's RFC (Tr. 22).  Even the government's own non-examining physicians stated that the plaintiff should avoid concentrated exposure to fumes, odors, dust gases, poor ventilation, etc. (Tr. 137, 154).  Substantial evidence does not support the ALJ's finding in this regard.  Accordingly, upon remand, the ALJ should include the environmental limitations described above in his RFC finding.

Lastly, the plaintiff argues that the ALJ erred in finding that her depression was not a severe  impairment.  "An impairment or combination of impairments is not severe if it does not limit [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §404.1521.  Substantial evidence supports the ALJ's finding that the plaintiff's depression was not severe.  Dr. Staton, the psychiatric consultative examiner, found that the plaintiff had a normal flow of mental activity, intact associations, and fair insight.  She demonstrated adequate judgment and good memory (Tr. 163).  Further, Dr. Molter stated

in his Attending Physician Statement that the plaintiff was able to function in most stress situations and some interpersonal relations, with only slight limitations in her psychological functioning (Tr. 159). Importantly, the plaintiff never sought treatment for any mental health issues.

## CONCLUSION AND RECOMMENDATION

Based upon the foregoing, this court recommends that the Commissioner's decision be reversed under sentence four of 42 U.S.C. §405(g), with a remand of the cause to the Commissioner for further proceedings as discussed above.

_____
WILLIAM M. CATOE
UNITED STATES MAGISTRATE JUDGE

February 8, 2006

Greenville, South Carolina

16